# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF OHIO
## WESTERN DIVISION

| | | |
|---|---|---|
| HILSINGER BUILDING AND DEVELOPMENT CORP., *et al.*, | : : | Case No. 1:18-cv-900 |
| Plaintiffs, | : : | Judge Timothy S. Black |
| vs. | : : | |
| TERRACON CONSULTANTS, INC., | : : | |
| Defendant. | : : | |

## ORDER GRANTING DEFENDANT'S
## MOTION FOR SUMMARY JUDGMENT
## AND CLOSING THIS CASE IN THIS COURT

This civil action is before the Court on Defendant Terracon Consultants, Inc. ("Terracon")'s motion for summary judgment (Doc. 9) and amended motion for summary judgment (Doc. 16) and the parties' responsive memoranda (Docs. 10, 13, 17, 19).[1] Also before the Court is Plaintiffs Hilsinger Building and Development Corp. ("Hilsinger") and Wesselpark II, LLC ("Wesselpark")'s motion for leave to file first amended complaint (Doc. 12) and the parties' responsive memoranda (Docs. 14, 15).

---

[1] Terracon requested oral argument on its motions for summary judgment. (Doc. 9 at 7; *see also* Doc. 16 at 12). The Court finds that thxthe pleadings are clear on their face, and that oral argument is not necessary. *See Whitescarver v. Sabin Robbins Paper Co.*, No. C-1-03-911, 2006 WL 2128929, at *2 (S.D. Ohio July 27, 2006) ("Local Rule 7.1(b)(2) leaves the court with discretion to grant a request for oral argument.").

# I.    BACKGROUND[2]

This case arises out of Defendant Terracon's consulting and engineering services provided relating to a project to build a retaining wall on Plaintiffs' property. Plaintiffs seek to hold Terracon responsible for perceived flaws in Defendant's services, which allegedly resulted in several failures of the wall. Defendant has moved for summary judgment based on limitation of liability provisions contained in the parties' agreements.

Terracon and Hilsinger entered into three separate agreements, each for various services related to the construction of the retaining wall on Hilsinger's property. (Doc. 17-1 at ¶¶ 1-14). Each agreement contains a "limitation of liability" provision. The first two agreements state that Defendant's liability to Plaintiffs "is limited to the greater of $50,000 or consultants fee." (*Id.* at ¶¶ 5, 9). The third agreement states the same, but with a limit of "the greater of $25,000 or consultants fee." (Doc. 11-4 at 6 ¶ 6; Doc. 16-2 at 37 ¶ 6). The full text of the limitation of liability provisions is as follows:

> **LIMITATION OF LIABILITY. CLIENT AND CONSULTANT HAVE EVALUATED THE RISKS AND REWARDS ASSOCIATED WITH THIS PROJECT, INCLUDING CONSULTANT'S FEE RELATIVE TO THE RISKS ASSUMED, AND AGREE TO ALLOCATE CERTAIN OF THE ASSOCIATED RISKS. TO THE FULLEST EXTENT PERMITTED BY LAW, THE TOTAL AGGREGATE LIABILITY OF CONSULTANT (AND ITS RELATED CORPORATIONS AND EMPLOYEES) TO CLIENT AND THIRD PARTIES**

---

[2] Pursuant to the Standing Order of the Court, Defendant filed a Statement of Proposed Undisputed Facts. (Doc. 9-1). Plaintiffs responded to Defendant's Proposed Undisputed Facts. (Doc. 10-1). The parties engaged in a second round of exchanging undisputed facts in relation to Defendant's amended motion for summary judgment. (Docs. 16-2, 17-1). The Court's statement of facts set forth here incorporates the facts undisputed by the parties and the facts confirmed by the Court upon review of the citations to the evidentiary record provided by the parties.

**GRANTED RELIANCE IS LIMITED TO THE
GREATER OF $50,000 OR CONSULTANTS FEE, FOR
ANY AND ALL INJURIES, DAMAGES, CLAIMS
LOSSES, OR EXPENSES (INCLUDING ATTORNEY
AND EXPERT FEES) ARISING OUT OF
CONSULTANT'S SERVICES OR THIS AGREEMENT.
PRIOR TO ACCEPTANCE OF THIS AGREEMENT
AND UPON WRITTEN REQUEST FROM THE
CLIENT, CONSULTANT MAY NEGOTIATE A
HIGHER LIMITATION FOR ADDITIONAL
CONSIDERATION. THIS LIMITATION SHALL
APPLY REGARDLESS OF AVAILABLE
PROFESSIONAL LIABILITY INSURANCE
COVERAGE, CAUSE(S) OR THE THEORY OF
LIABILITY, INCLUDING NEGLIGENCE,
INDEMNITY, OR OTHER RECOVERY. THIS
LIMITATION SHALL NOT APPLY TO THE EXTENT
THE DAMAGE IS PAID UNDER CONSULTANT'S
COMMERCIAL GENERAL LIABILITY POLICY.**

(*See, e.g.*, Doc. 16-2 at 5-6).

Pursuant to these agreements, Plaintiff Hilsinger paid Terracon a total of

approximately $20,000-$30,000 for its services.  (Doc. 11 at ¶ 23; Doc. 17-1, at ¶ 14).

Under the first two contracts, each with a $50,000 cap on liability, Hilsinger paid

Terracon $5,450 and $4,500, respectively (Doc. 17-1 at ¶¶ 3, 8).  Under the third

contract, with a $25,000 cap on liability, Hilsinger paid Terracon between $7,250 to

$19,651.25 for services related to the wall.  (*Id.* at ¶ 14).[3]

---

[3] Terracon asserts that Hilsinger paid a total of $19,651.25 pursuant to the third agreement.
However, Plaintiffs allege that any amounts paid above the agreed fee of $7,250 were outside the
scope of the third agreement.  (Doc. 17-1, at ¶ 14).  Whether Hilsinger paid $7,250 or $19,651.25
pursuant to the third agreement is irrelevant, because the larger amount is still less than the
liability cap defined as *the greater of* the fee paid for services or $25,000.  In addition, in an
affidavit, Hilsinger states that Plaintiffs paid Terracon a total of $32,856.25 for its services
related to slope stability and design and construction of the retaining wall.  (Doc. 11 at ¶ 23).

From October 2015 through December 2017, Plaintiffs noticed, on three separate occasions, that portions of the retaining wall constructed pursuant to Terracon's tests and plans had failed.  (Doc. 5 at ¶¶ 24, 30, 37; Doc. 17-1 at ¶¶ 17, 22).  In the first instance, in October 2015, Plaintiffs "noticed slippage of the hillside and movement of the retaining wall at the southeast end of the wall."  (Doc. 5 at ¶ 24; Doc. 17-1 at ¶ 17).  Terracon inspected the site, made recommendations regarding remediation, and retained Scherzinger Drilling to complete the remediation work.  (Doc. 5 at ¶¶ 26-28; Doc. 17-1 at ¶¶ 18-19).  Terracon asserts that it paid Scherzinger Drilling $29,000 for that work.  (Doc. 9-1 at 8 ¶ 4, 10; Doc. 17-1 at ¶ 20).  Terracon sent Hilsinger a "letter of understanding" related to the $29,000 payment, in which Terracon explained that "[i]n exchange for the payment for the corrective work to the drilled pier wall, Hilsinger and Terracon agree that Terracon is released and discharged from any and all claims associated with the past failure of the section of the drilled pier wall at Country Woods Village."  (Doc. 9-1 at 12).

Then, in May 2016, Plaintiffs discovered a second area of movement on the slope in the northwest section of the wall.  (Doc. 5 at ¶ 30; Doc. 17-1 at ¶ 22).  Terracon again inspected the property, made recommendations, and this time, retained Argo Construction to perform the remediation.  (Doc. 17-1 at ¶¶ 23-24, 26).  Terracon asserts that it paid Argo Construction one payment of $71,150 and another payment of $46,855 to complete this work.  (Doc. 9-1 at 8 ¶ 5, 15; Doc. 16-2 at 45-47, 49-51; Doc. 17-1 at ¶¶ 25, 27).

Plaintiffs allege that they discovered additional hillside slippage in December 2017 in both the southeast and southwest ends of the retaining wall, where the prior slope failures had occurred. (Doc. 5 at ¶ 37). Between December 2017 and June 2018, Terracon assessed the latest failures and developed a remediation plan, which included the design and construction of a second retaining wall. (*Id.* at ¶ 39). Terracon asserts that it paid Berding Surveying $1,250 to survey the property following the issues discovered in 2017. (Doc. 16-2 at 53; Doc. 17-1 at 28-28). Finally, in June 2018, Terracon notified Plaintiffs by letter that it was "putting an end to its work" related to the slope and retaining wall. (Doc. 11 at ¶ 44).

Plaintiffs initially filed this action in the Hamilton County Court of Common Pleas alleging negligence and breach of warranty. (Doc. 5). Plaintiffs allege that Terracon did not perform adequate tests of the slope and incorrectly assumed that the depth of the bedrock layer was consistent below the surface of the hillside where the retaining wall was to be constructed. (Doc. 5 at ¶¶ 16-17). Terracon also allegedly made false assumptions regarding the thickness and type of soil that the wall was designed to resist. (*Id.* at 16). In short, Plaintiffs claim Terracon failed to conduct proper tests in advance of construction, failed to recognize its false assumptions during construction, and failed to adequately design and implement remediation of the discovered failings of the wall. (*Id.* at 45). At one point in Plaintiffs' complaint, Plaintiffs specifically allege that, as part of Terracon's remediation work, Terracon directed Argo Construction to grade the hillside in a particular manner "in an attempt to minimize the hillside slippage and to cover up the

fact that Terracon's original design would not work given the actual conditions encountered at the site." (*Id.* at ¶ 35).

Defendant removed the case to this Court on December 21, 2018 (Doc. 1) and proceeded to file a motion for summary judgment asserting that Terracon is entitled to judgment as a matter of law because the company paid sub-contractors an amount in excess of the $50,000 liability cap specified in the parties' agreement. (Doc. 9 at 2). Plaintiffs responded by arguing, among other things, that the limitation of liability provision is inapplicable to Plaintiffs' tort claims, especially considering the allegations that Defendant acted with gross negligence or malice. (Doc. 10 at 2). Plaintiffs also moved for leave to file an amended complaint in order to clarify that Plaintiffs are alleging gross-negligence, not just simple negligence, and that their allegations stem, in part, from each of the parties' *three agreements*, having only attached one of the agreements as an exhibit to their original complaint. (Doc. 12 at 3).

Terracon then filed an amended motion for summary judgment asserting that even if the Court were to aggregate the limitation of liability amounts from each agreement (totaling $125,000), Defendant would still be entitled to summary judgment, since the amount it paid sub-contractors to remediate the alleged issues with the retaining wall totaled at least $148,255. (Doc. 16 at 4, 8).

## II.    STANDARD OF REVIEW

A motion for summary judgment should be granted if the evidence submitted to the Court demonstrates there is no genuine issue as to any material fact, and that the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). *See Celotex*

*Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–48 (1986). The moving party has the burden of showing the absence of genuine disputes over facts which, under the substantive law governing the issue, might affect the outcome of the action. *Celotex*, 477 U.S. at 323. All facts and inferences must be construed in a light most favorable to the party opposing the motion. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

A party opposing a motion for summary judgment "may not rest upon the mere allegations or denials of his pleading, but . . . must set forth specific facts showing that there is a genuine issue for trial." *Anderson*, 477 U.S. at 248.

## III. ANALYSIS

### A. Defendant's amended motion for summary judgment

As an initial matter, the Court must decide whether to entertain Defendant's amended motion for summary judgment. (Doc. 16). Defendant's amended motion submits two new receipts documenting additional payments Defendant made to subcontractors to address the wall failures. (*Id.* at 8; Doc. 16-2 at 49-53). These two payments bring the total Terracon paid subcontractor for remedial work to $148,255, an amount greater than the $125,000 aggregate liability limit. (Doc. 16-2 at ¶ 14).

Plaintiffs argue that Defendant's amended motion, filed without leave of court, constitutes improperly filed "additional memoranda" in violation of the local rule governing opposing and reply memoranda. (Doc. 17 at 2, n.1) (citing S.D. Ohio Civ. R. 7.2(a)(2)) ("No additional memoranda beyond those enumerated are permitted except upon leave of court for good cause shown.")).

The Court finds that Defendant has adequately demonstrated good cause for filing its amended motion for summary judgment. The Court held off on entering a calendar order, which would typically set a deadline for filing dispositive motions, in order to allow Defendant to raise the threshold issue of the potential application of a limitation of liability. Thus, Defendant's amended motion for summary judgment was not untimely with respect to the case calendar. In addition, because Plaintiffs only attached one of the three agreements to their initial complaint, the Court finds plausible Defendant's argument that it was not on notice that it would be subject to the aggregate of all three limitation provisions. Defendant also adequately justifies filing its amended motion by explaining that it discovered the additional invoice of $46,855 to Argo Construction while responding to a discovery request served after Defendant filed its initial motion. (Doc. 16 at 4).

Plaintiffs are not prejudiced by the Court's acceptance of Defendant's amended motion for summary judgment. The amended motion raises the same substantive arguments regarding the application of the limitation of liability provisions that Defendant raised in its initial motion, and Plaintiffs have had an opportunity to respond to the amended motion. Thus, the Court will consider the arguments raised in Defendant's amended motion for summary judgment. (Doc. 16). Defendant's first motion for summary judgment was fully briefed prior to the filing of the amended motion, and Plaintiffs' response to Defendant's amended motion for summary judgment essentially incorporates by reference its prior arguments. Consequently, the Court will consider the parties' briefing with respect to both motions for summary judgment.

## B. Plaintiffs' release of certain claims

As a second initial matter, the Court finds that Plaintiffs have expressly waived all claims related to the past failure of a certain portion of the wall. (*See* Doc. 16 at 7). Defendant presents a "letter of understanding" from Terracon to Plaintiff Hilsinger, which states that, in exchange for corrective work completed by Scherzinger Drilling on the section of the wall located from Piers S101 to S112, "Terracon is released and discharged from any and all claims associated with the past failure of [that] section of the drilled pier wall." (Doc. 16-2 at 42). In addition, the purchase order from Terracon to Scherzinger Drilling notes the following in the description section: "Contractor expense for repair of retaining wall failure in lieu of legal process. Settlement to resolve issue on Country Woods Estate Project." (*Id.* at 40).

Plaintiffs do not dispute the contents of the letter of understanding, but rather, highlight a line in the letter stating that "[Terracon] will make this payment directly to Scherzinger in appreciation of our long-standing business relationship with Hilsinger." (Doc. 17-1 at ¶ 21). However, Terracon's statement that it would pay the subcontractor directly because of its "long-standing" relationship with Hilsinger does not negate in any way the agreed release of claims pertaining to the past failure of the specified portion of the wall. Plaintiffs also note that the claims alleged in the complaint exceed the scope of this initial wall failure. That is certainly the case. Nevertheless, the Court finds that Terracon is entitled to summary judgment to the extent that Plaintiffs' claims are "associated with the past failure of [the] section of the drilled pier wall" located from Piers S101 to S112.

## C.  Enforceability of limitation of liability provisions

In response to Defendant's argument that it is entitled to summary judgment based on an application of the limitation of liability provisions contained in the three agreements between Hilsinger and Terracon, Plaintiffs argue that the limitation of liability provisions are either unenforceable or inapplicable for three reasons: (1) the provisions are unenforceable with respect to Plaintiffs' tort claims, (2) the provisions are ambiguous, and (3) Terracon's work exceeded the scope of the agreements.  Each argument will be addressed in turn.

### 1.  Application of limitation of liability provision to Plaintiffs' "tort" claims

All three agreements between Hilsinger and Terracon contain a choice of law provision stating that the agreements "shall be governed by and construed according to Kansas law."  (Doc 16-2 at 24, 31, 38).  In a diversity action, courts apply the choice-of-of-law principles of the forum state—here Ohio.  *State Farm Mut. Auto Ins. Co. v. Norcold, Inc.*, 849 F.3d 328, 331 (6th Cir. 2017).  Ohio law "strongly favor[s] upholding the chosen law of the contracting parties," and will enforce a choice-of-law provision unless (1) the chosen state has no substantial relationship to the parties and there is no other reasonable basis for the parties' choice or (2) its application would contradict a fundamental policy of another state with a materially greater interest in the issue.  *Sims Buick-GMC Truck, Inc. v. GM LLC*, 876 F.3d 182, 185 (6th Cir. 2017) (citing *Sekeres v. Arbaugh*, 508 N.E.2d 941, 942 (Ohio 1987)).  Here, the fact that Terracon maintains its headquarters in Kansas demonstrates a substantial relationship to the state, and there is no

indication that Ohio has a materially greater interest in this action. *Id.* at 185-86. Thus, Kansas law applies to this Court's determination of the applicability of the limitation of liability provisions. *See Wise v. Zwicker & Assocs., P.C.*, 780 F.3d 710 (6th Cir. 2015) (applying contract choice-of-law analysis where issue was enforceability of provision in agreement).

Limits on liability are generally enforceable under Kansas law, except where enforcing the provision would prove unconscionable or where the plaintiff asserts that the defendant acted willfully or with gross-negligence in the context of a tort claim. *See LDCircuit, LLC v. Sprint Commc'ns Co., L.P.*, 364 F. Supp. 2d 1246, 1258 (D. Kan. 2005) (noting that the exception for gross-negligence or willful conduct applies only to tort claims); *Wille v. Sw. Bell Tel. Co.*, 549 P.2d 903, 910-11 (Kan. 1976) (finding limitation of liability enforceable where no indication contract was unconscionable or that defendant acted with gross-negligence).

Plaintiffs makes no assertion of unconscionability here, where the limitation of liability provisions were presented in bold and all-caps, and where the parties are both sophisticated, commercial entities. Yet, Plaintiffs do assert that the liability limit is unenforceable with respect to their tort claims, having alleged that Terracon acted with gross negligence. Plaintiffs bring both a "negligence" claim and a "breach of warranty" claim. (Doc. 5). In their original complaint, Plaintiffs allege under the "negligence" count that Defendant's actions and omissions "demonstrate malice or aggravated or egregious fraud." (*Id.* at ¶ 47). Moreover, Plaintiffs seek to amend their complaint in order to add language clarifying that they are alleging gross-negligence or malice rather

than simple negligence.  (Doc. 12-1 at ¶¶ 62-63).

In reply, Defendant argues that Plaintiffs' claims sound in contract law, despite their presentation as tort claims.  (Doc. 13 at 8).  Defendant further argues that regardless of whether the Court classifies Plaintiffs' claims as tort or contract claims, the liability limit would apply because Plaintiffs have failed to adequately plead gross negligence or willfulness.  (*Id.* at 9).

The Court will first address the question of whether Plaintiffs' negligence and breach of warranty claims should, in substance, be properly classified as contract claims. Because the determination of whether a claim sounds in contract or tort law is considered a procedural matter, the Court will apply the law of the forum to this question—Ohio law.  *Gouge v. Bax Global Inc.*, 252 F. Supp. 2d 509, 521 (N.D. Ohio 2003) (citing *Mahalsky v. Salam Tool Co.*, 461 F.2d 581, 583-84 (6th Cir. 1972)).  Courts applying Ohio law "look to the nature of the grievance rather than the form of the pleading" to determine whether an action lies in contract or tort law.  *Schwartz v. Bank One, Portsmouth, N.A.*, 619 N.E. 2d 10, 12 (Ohio Ct. App. 1992) (noting that the addition of certain adverts like "intentionally" and "willfully" do not change the nature of the cause of action).

In tort actions that are "factually intertwined" with a contract, a "tort claim lies against a contracting party independent of a breach of contract claim so long as the plaintiff alleges a breach of a duty owed separately from obligations created by the contract."  *Academic Imaging, LLC v. Soterion Corp.*, 352 F. App'x 59, 65, 67 (6th Cir. 2009) (applying Ohio law).  In other words, a cognizable tort action must allege a breach

"of some positive legal duty imposed by law because of the relationship of the parties, rather than from a mere omission to perform a contract obligation." *Cork-Howard Const. Co. v. Dirty D. Props., LLC*, No. 16-cv-1964, 2017 WL 5574145, at *2 (N.D. Ohio Nov. 20, 2017) (citing *Bowman v. Goldsmith Bros. Co.*, 109 N.E.2d 556, 557 (Ohio Ct. App. 1952)); *see also Selective Way Ins. Co. v. Glasstech, Inc.*, No. 16-cv-1177, 2018 WL 1871092, at *4 (N.D. Ohio Apr. 19, 2018) ("[I]t is well established in Ohio that it is no tort to breach a contract, regardless of motive.") (quoting *Hoskins v. Aetna Life Ins. Co.*, 452 N.E.2d 1315 (1983)); *Integrated Molding Concepts, Inc. v. Stopol Auctions*, No. 1:07-cv-2617, 2007 WL 3001385, at *5 (N.D. Ohio Oct. 11, 2007) ("That the acts alleged would be tortious conduct under noncontractual circumstances does not make a breach of contract a tort.") (quoting *Lightbody v. Rust*, No. 80927, 2003 WL 21710601, at *6 (Ohio Ct. App. July 24, 2003)).

In addition, in order to sufficiently plead a tort claim, a plaintiff "must include actual damages attributable to the wrongful acts of the alleged tortfeasor which are *in addition* to those attributable to the breach of the contract." *Babcock & Wilcox Power Generation Grp., Inc. v. R.T. Patterson Co.*, No. 5:13-cv-2071, 2015 WL 631189, at *2 (N.D. Ohio Feb. 12, 2015) (citing *Textron Fin. Corp.*, 684 N.E.2d 1261, 1270 (Ohio Ct. App. 1996)).

Here, Plaintiffs have failed to identify a duty independent of Defendant's contractual duty to perform services in a workmanlike manner, consistent with professional standards. As such, the Court finds that Plaintiffs' claims sound in contract law only. To reiterate, Plaintiffs assert two claims: (1) negligence and (2) breach of

warranty.  (Doc. 5 at ¶¶ 43-54; Doc. 12-1 at ¶¶ 59-70).  Plaintiffs' negligence claim

specifically states that "Terracon owed a duty of care to provide its consulting,

engineering and other services in connection with the Property competently and with the

requisite reasonable skill and care exercised by other similarly situated professionals."

(Doc. 5 at ¶ 44; Doc. 12-1 at 60).  Plaintiffs' breach of warranty claim similarly alleges

that "Terracon expressly and/or impliedly warranted that it would perform its services

described in the proposals and agreements . . . in a workmanlike manner consistent with

that level of care and skill ordinarily exercised by members of the profession currently

practicing under similar conditions in the same locale."  (Doc. 5 at ¶ 49; Doc. 12-1 at

¶ 65).

    Ohio law recognizes a duty of builders or contractors to perform work in a

workmanlike manner—a duty which arises out of contract law.  *See Cork-Howard*, 2017

WL 5574145, at *3.  While Ohio courts have primarily found this contract duty to exist in

the context of contracts for the future construction of homes, courts have stated the rule

broadly, finding that a duty to perform services in a workmanlike manner applies to

builders and contractors with respect to "contracts for future construction services (such

as the remodeling or repair of an existing structure)."  *Jarupan v. Hanna*, 878 N.E.2d 66,

73 n.1 (Ohio Ct. App. 2007) (citing *Barton v. Ellis*, 518 N.E.2d 18 (Ohio Ct. App.

1986)); *see also Cork-Howard*, 2017 WL 5574145 (involving construction work at

business property).  For example, in *Evans Lanscaping, Inc. v. Stenger*, the court found

that the plaintiffs, who alleged breach of contract and nuisance (tort) based on the

defendant's failure to properly construct a fish pond on their property, were limited to

14

recovery under contract law.  969 N.E.2d 1264, 1268-69 (Ohio Ct. App. 2011).  The court reasoned that "[b]ecause the only duty identified by the [plaintiffs] in their counterclaim—the duty to perform in a workmanlike manner—arises out of the parties' agreement, the [plaintiffs] cannot rely on the breach of this duty as the basis for their nuisance claim."  *Id.*

Here, Plaintiffs' efforts to couch its pleadings in language evincing tort claims are unavailing.  The only duty Plaintiffs identify is Terracon's duty to perform services in a workmanlike manner or in a manner consistent with professional standards.  The agreements between the parties even contain an express warranty providing that "Consultant will perform the services in a manner consistent with that level of care and skill ordinarily exercised by members of the profession currently practicing under similar conditions in the same locale."  (*See, e.g.*, Doc. 11-1 at 9 ¶ 6).  Because the only duty Plaintiffs rely on arises out of the parties' agreements, the Court finds that Plaintiffs' claims are grounded in contract law only.

Plaintiffs' argument that Terracon had an independent duty with respect to work it performed outside the list of services expressly described in the parties' agreement (*e.g.,* remediation work) is also unavailing.  In making this argument, Plaintiffs lose sight that the test is not whether Defendant performed work outside the scope of the contract, but rather whether Defendant had a duty *independent* of that arising out of the parties' agreements.  The cases Plaintiffs cite do not support their position.  In *Bekemeyer v. Gelco Corporation*, an Ohio case, the court found that the plaintiff adequately identified a duty to support a negligence claim under the theory that "when one undertakes a duty

voluntarily, and another reasonably relies on that undertaking, the volunteer is required to exercise ordinary care in completing the duty." No. 1:17cv695, 2019 WL 952733, at *5 (S.D. Ohio Feb. 29, 2019). However, unlike in *Bekemeyer*, here, the parties are in privity of contract. In addition, the duty Plaintiffs' allege in the complaint (and proposed amended complaint) is the duty to perform services in a workmanlike manner, not the duty of care related to voluntary undertakings. Even if Plaintiffs had alleged a duty of care related to voluntary undertakings in their complaint, it would be inapplicable, since the work done by Defendant was not "voluntary."[4]

Moreover, Plaintiffs' argument that its claims related to work done outside the scope of the contracts, including remediation work, should be analyzed as tort claims is undermined by its breach of warranty allegations. Under the breach of warranty section of Plaintiffs' complaint, Plaintiffs specifically allege that "Terracon initially honored its warranties and consulted with Plaintiffs in connection with the remediation of the first, second and third slope failures occurring at the site" but that "[b]eginning on or around June 5, 2018, Terracon ceased honoring its warranties and notified Plaintiffs that it would no longer provide services in connection with the Project." (Doc. 5 at ¶¶ 51-52; Doc. 12-1 at ¶¶ 67-68). Thus, Plaintiffs acknowledge that at least some work done outside the scope of the contracts (remediation) was in furtherance of Defendant's obligations under the contracts to provide workmanlike services. *See also Cork-Howard*, 2017 WL

---

[4] Another case Plaintiff cites, *Ballreich Bros., Inc. v. Criblez*, No. 05-09-36, 2010 WL 2735733 (Ohio Ct. App. July 12, 2010), is also distinguishable, as that case involves attorney and accountant malpractice, not the duty of builders or contractors to perform in a workmanlike manner.

5574145, at *3 (rejecting party's argument that claims related to construction contract were tort claims because the contract did not list the specific duties that defendant allegedly breached).

Plaintiffs have also failed to plead damages in addition to those that would be attributable to a breach of contract claim. *Babcock & Wilcox Power*, 2015 WL 631189, at *2. In Ohio, the economic loss rule precludes a plaintiff from bringing a tort action related to the breach of duties arising under a contract where the plaintiff seeks to recover purely economic damages. *See Dana Ltd. v. Aon Consulting, Inc.*, 984 F. Supp. 2d 755, 767 (N.D. Ohio 2013); *Ross v. PennyMac Corp.*, 1:17-cv-636, 2018 WL 2215924, at *3 (S.D. Ohio May 15, 2018). In Plaintiffs' original complaint, Plaintiffs assert the following damages resulting from Terracon's acts and omissions and breaches of warranty: "tangible, physical damage to property, loss of use of the property and rental income, loss of value, cover damages, and the cost of remediation and repair." (Doc. 5 at ¶¶ 46, 54). In their proposed amended complaint, Plaintiffs more strategically limit the damages to "tangible, physical damage to property." (Doc. 12-1 at ¶¶ 62, 70). However, in order to adequately plead separate damages, a plaintiff must do more than simply allege "property damage." *See Dana*, 864 F. Supp. 2d at 767.[5] The facts alleged in

---

[5] Plaintiffs argue that Terracon's directing of the re-grading of the slope resulted in "drainage and aesthetic problems for tenants" in buildings on the subject property and therefore constitute facts in support of property damage sounding in tort. (Doc. 5 at ¶ 35; Doc. 12-1 at ¶ 51). However, this one sentence assertion alone does not transform Plaintiffs' contract claim into one for property damages sounding in tort, as this "damage" is also interwoven with the breach of contract allegations (*i.e.*, that Defendant did not properly grade and install an adequate drainage system to remediate the wall's failures).

Plaintiffs' complaint support a claim for breach of contract (as discussed above)—but they do not support a separate action sounding in tort to recover for property damage. The alleged "damage" to the property is inseparable from Defendant's alleged failure to ensure proper construction of the retaining wall and to adequately remediate the wall's multiple failings.

In sum, Plaintiffs' "negligence" and "breach of warranty" claims in substance allege that Terracon breached its *contractual duty* to provide services in accordance with professional standards. Plaintiffs have also failed to adequately plead damages apart from those arising from the breach of contract. Because Plaintiffs' claims sound in contract law, their argument that the limitation on liability does not apply to their *tort* claims fails.

### 2.     Ambiguity of the limitation of liability provision

Plaintiffs also argue that the limitation of liability provisions are ambiguous, and therefore ineffective. (Doc. 10 at 14-15). Plaintiffs point to the last line of the provision which states: "**THIS LIMITATION SHALL NOT APPLY TO THE EXTENT THE DAMAGE IS PAID UNDER CONSULTANT'S COMMERCIAL GENERAL LIABILITY POLICY**." (*Id.* at 1). Plaintiffs' argument here is that because it is possible that damages awarded in the future will be covered by Terracon's insurance policy, the applicability of the limitation limit cannot yet be determined to any degree of certainty. (*Id.* at 15). Plaintiffs also argue that the phrase "paid under" the policy is ambiguous because it is unclear whether the phrase includes a scenario where the insured pays the claim and then is reimbursed by the insurance company. (*Id.*).

Defendant disagrees with Plaintiffs' portrayal of the provision as ambiguous and further asserts that because its commercial general liability policy excludes liability for professional services, it is clear that the damages Plaintiffs seek would not be covered. (Doc. 13 at 10-11).  In support of its position, Defendant submits the declaration of David Westendorf, a project geotechnical engineer at Terracon, as well as copies of the commercial general insurance policies in place during the relevant time period. Defendant also notes that Terracon's work would be covered by a separate "professional liability policy."  (*Id.* at 13, n.12).

Because this argument concerns the applicability of a contract provision, the Court again turns to Kansas law.  To determine whether a contract is ambiguous under Kansas law, courts consider whether the wording is susceptible to different interpretations. *Sprint Nextel Corp. v. Middle Man, Inc.*, 822 F.3d 524, 530 (10th Cir. 2016) (citing *Thoroughbred Assocs., LLC v. Kan. City Royalty Co.*, 308 P.3d 1238, 1247 (Kan. 2013)). "To be ambiguous, a contract must contain provisions or language of doubtful or conflicting meaning, as gleaned from a natural and reasonable interpretation of its language." *Gerdes v. Am. Fam. Mut. Ins. Co.*, 713 F. Supp. 2d 1290, 1296 (D. Kan. 2010) (quoting *Catholic Diocese of Dodge City v. Raymer*, 840 P.2d 456, 459 (Kan. 1992)).  "A document, even one that is not contemporaneous, may be incorporated by reference into a contract so long as 'the contract makes clear reference to the document and described it in such terms that its identity may be ascertained beyond doubt." *Irsik & Doll Feed Servs., Inc. v. Roberts Enters. Inv.*, No. 6:16-1018, 2016 WL 3405175, at *4 (D. Kan. June 20, 2016).

The limitation of liability provisions contained in the parties' agreements specifically identify and incorporate by reference Terracon's commercial general liability policy. A review of the commercial general liability policies in place during the course of Terracon's work on Plaintiffs' property reveals that Terracon's insurance coverage for claims related to its "professional services" was expressly excluded. (Doc. 13-2 at 7-8; Doc. 13-3 at 5; Doc. 13-4 at 5; Doc. 13-5 at 5). The term "professional service" is defined in the policies as:

> [A]ny service requiring specialized skill or training, including:
>
> a. Preparation, approval, provision of or failure to prepare, approve, or provide any map, shop drawing, opinion, report, survey, field order, change order, design, drawing, specification, recommendation, warning, permit application, payment request, manual or instruction;
>
> b. Supervision, inspection, quality control, architectural, engineering or surveying activity or service, job site safety, construction contracting, construction administration, construction management, computer consulting or design, software development or programming service, or selection of a contractor or subcontractor; or
>
> c. Monitoring, testing, or sampling service necessary to perform any of the services de-scribed in Paragraph a. or b. above.

(Doc. 13-3 at 5).

The conduct at issue here, involving Terracon's failure to adequately test the site, supervise construction of the wall, and develop and implement a remediation plan, clearly falls under this definition. As Defendant explains, the 2015 policy was amended, effective January 1, 2015, to exclude liability related to professional services. (Doc. 13-

2).  Prior to that date, the policy covered "professional liability" which included "loss . . . as a result of claims first made against the insured . . . in writing during the policy period for actual of alleged errors or omissions arising out of professional services rendered by or on behalf of the insured."  (Doc. 13-2 at 7).  The first wall failure Plaintiff discovered was in October 2015, after the amendment.  Thus, for the entirety of the relevant period, Terracon's commercial general liability insurance policies unambiguously excluded coverage for the sort of "professional services" that form the basis of Plaintiffs' complaint.  Moreover, whether the phrase "paid under [the policy]" includes payments made by Terracon which are then reimbursed by the insurance company is irrelevant, because even assuming the phrase encompasses this scenario, the conduct at issue here would not be covered by the policy in the first place.

### 3.    Scope of the agreements

Plaintiffs' third argument, that the limitation of liability does not apply to work done by Terracon outside the scope of the work expressly set forth in the parties' three agreements, is also flawed.  (*See* Doc. 10 at 11-14).  As discussed *supra*, although Terracon performed work in addition to the list of services provided in the agreements, including remediation, that work was related to Terracon's prior, agreed-upon work and in furtherance of Terracon's duty under the contracts to provide services in a workmanlike manner and up to professional standards.

### D.    Application of limitation on liability to Plaintiffs' claims

Having found that the limitation of liability provisions are enforceable, the Court will next assess the merits of Terracon's argument that it is entitled to summary

judgment, having paid over $145,000 to third-parties for remediation, in excess of the aggregate liability cap of $125,000. (Doc. 16 at 10). Terracon submits a purchase order of the first payment of $29,000 made to Scherzinger Drilling for remediation of the first wall failure, (Doc. 9-1 at 7 ¶ 3, 10), and well as a letter of understanding in which Hilsinger agreed to release Terracon from liability for the first wall failure in exchange for the payment. (Doc. 9-1 at 12). Terracon also provides a copy of a purchase order from Terracon to Argo Construction for $71,159, as well as the related invoice. (Doc. 9-1 at 8 ¶ 5, 15-16). A declaration of David Westendorf, a project geotechnical engineer at Terracon, states that Terracon made these first two payments to address Plaintiffs' complaints about Terracon's services. (Doc. 9-1 at 8 ¶¶ 4-5). Attached to Defendant's amended motion for summary judgment is a further purchase order and related invoice from Argo Construction to Terracon in the amount of $46,855. (Doc. 16-2 at 49-50). Also attached is an invoice to Terracon from Berding Surveying for services provided from April 2018 to June 2018 for $1,250. (Doc. 16-2 at 53). Westendorf states that these two, latter payments were also paid by Terracon to address Plaintiffs' complaints with its services. (Doc. 16-2 at 13 ¶¶ 12-13). In sum, Westenforf states in his declaration that Terracon paid the subcontractors Scherzinger Drilling, Argo Construction, and Berding Surveying a total of $148,255. (*Id.* at ¶ 14).

Plaintiffs respond to Defendant's proposed undisputed facts relating these payments by stating "[a]t this early stage, Plaintiffs have not had an opportunity to conduct discovery of facts that would enable them to admit or deny that this work was completed at Terracon's cost, and therefore denies . . . for lack of knowledge."

(Doc. 17-1 at 8-9).  However, Plaintiffs agree that the remedial work by the subcontractors was in fact completed (*Id.* at ¶¶ 19, 24, 26), and do not state anywhere in the record that Plaintiffs, rather then Terracon, paid the subcontractors for their work.[6] Thus, the fact that Terracon paid subcontractors over the $125,000 aggregate liability cap is undisputed by the record.

As a final argument, Plaintiff asserts that because the limitation of liability provisions limit Terracon's liability "to client [Plaintiffs] and third parties granted reliance," the payments Terracon made to third-party subcontracts (rather than to the Plaintiffs directly) do not count towards the cap.  (Doc. 17 at 4).[7]  However, this technical

---

[6] Although at various points in Plaintiffs' responses in opposition to Defendant's motions for summary judgment Plaintiffs state that additional discovery is needed, they have not complied with the requirements of Federal Rule of Civil Procedure 56(d), which permits a nonmovant to show "*by affidavit or declaration* that, for specific reasons, it cannot present facts essential to justify its opposition."  (emphasis added).  Plaintiffs do not explain in an affidavit or declaration, or otherwise why specifically they are unable to justify their position with "essential" facts.  *See Lane v. Wexford Health Sources*, 519 F. App'x 385, 388 (6th Cir. 2013) ("Because Lane failed to satisfy the requirements of Rule 56(d), the district court was under no obligation to allow additional discovery pertaining to his medical records before granting summary judgment.").

Here, Defendant was permitted to, at an early stage of the case, seek summary judgment on the legal issue of the applicability of the limitation of liability provisions.  Nevertheless, while Defendant's motions were pending, the parties engaged in at least a limited amount of discovery.  (*See* R. 16-1) (Plaintiffs' first set of discovery requests to Defendant).

In addition, Plaintiffs' original complaint states that "Terracon provided its services to remediate the . . . slope failure[s] at its own costs and in furtherance of its warranty obligations in connection with its original retaining wall design."  (Doc. 5 at ¶¶ 29, 36).  This language is notably absent in Plaintiffs' proposed amended complaint.

[7] The agreements set forth a process for establishing "third party reliance" whereby "Consultant . . . issue[s] additional reports to others agreed upon with Client" understanding "that such reliance will not be granted until those parties sign and return Consultant's reliance agreement and Consultant received the agreed-upon reliance fee."  (*See* Doc. 12-1 at 25 ¶ 5).  Defendant does not attempt to argue that the subcontractors here were "third parties in reliance" under the agreements.

argument is inconsistent with the intent of the parties, as derived from an ordinary understanding of their agreements limiting Terracon's liability.

Under Kansas law, "[t]he cardinal rule of contract interpretation is that the court must ascertain the parties' intention and give effect to that intention when legal principles so allow." *McGlon v. Sprint Corp.*, No. 16-2099, 2018 WL 1847035, at *5 (D. Kan. Apr. 18, 2018) (quoting *Ryco Packaging Corp. v. Chapelle Int'l Ltd.*, 926 P.2d 669, 674 (1996)). When a contract is unambiguous on its face, the court must determine the parties' intent from the four corners of the document. *LDCircuit*, 364 F. Supp. 2d at 1256 (citing *Simon v. Nat'l Farmers Org., Inc.*, 829 P.2d 884, 887-88 (1992)); *see also Quenzer v. Quenzer*, 587 P.2d 880, 882 (Kan. 1978) (stating that a court cannot rewrite a contract "to import an intent wholly unexpressed when it was executed").

In this case, the limitations on liability provisions' plain language unambiguously limits Terracon's liability to the Plaintiffs to not more than $125,000 total. These sophisticated parties agreed, prior to the start of Terracon's work, to cap Terracon's liability at nearly four times the total amount Plaintiffs ultimately paid Terracon for its services (approximately $30,000). (Doc. 11 at ¶ 23). The limitation of liability provisions specifically state that "prior to acceptance of this agreement and upon written request from client, consultant may negotiate a higher limitation for additional consideration." (*See, e.g.*, Doc. 16-2 at 37 ¶ 6). Thus, the parties unambiguously agreed to the liability limit, taking into account the cost of the services to be provided and assumed risks associated with the project.

Plaintiffs' argument that payments Terracon made directly to subcontractors related to its remediation efforts should not count towards Terracon's liability to the Plaintiffs would run counter to the parties' intent, at the time of their agreements, to limit Terracon's liability. Plaintiffs, upon recognizing each of the three slope failures, turned to Terracon to suggest and implement remediation plans, accepting the benefit of Terracon's remediation work. Plaintiffs' own complaint indicates that Terracon consulted with Plaintiffs in connection with the remediation for each of the three wall failures. (Doc. 5 at ¶ 51; Doc. 12-1 at ¶ 67). Thus, although Terracon did not directly pay the Plaintiffs, Plaintiffs accepted Terracon's remediation work at no cost. Plaintiffs may not now seek to hold Terracon liable for damages beyond the agreed-upon limitation of liability, which Terracon has surpassed. Consequently, Terracon is entitled to judgment as a matter of law.

**E.    Plaintiffs' motion for leave to amend their complaint**

Also pending before the Court is Plaintiffs' motion for leave to file first amended complaint. (Doc. 12). Following Defendant's removal and motion for summary judgment, Plaintiffs moved for leave to file an amended complaint in order to "make abundantly clear that their allegations include gross negligence on the part of Defendant, and that the claims arise, in part, from more than the one agreement that was attached to the original Complaint." (Doc. 12 at 3). The proposed amended complaint attaches as exhibits each of the parties' three agreements, adds more factual detail about each wall failure, and adds in language expressly alleging that Defendant's actions "demonstrate willful, wanton conduct, malice or egregious fraud and gross negligence." (Doc. 12-1 at

14, 18-45). Yet, the amended complaint does not change the substance of the "negligence" and "breach of warranty" claims alleged in the first complaint.

For the reasons discussed above, permitting Plaintiffs to amend their complaint would be futile. Pursuant to Fed. R. Civ. P. 15(a), "leave to amend a pleading shall be freely given when justice so requires." *Coe v. Bell*, 161 F.3d 320, 341 (6th Cir. 1998) (citing *Brooks v. Celeste*, 39 F.3d 125, 130 (6th Cir. 1994)). However, courts need not grant leave to amend when to do so would be futile. *See United States ex rel. Ibanez v. Bristol-Myers Squibb*, 847 F.3d 905, 917 (6th Cir. 2017). When a motion to amend is made in response to a motion for summary judgment, leave to amend the complaint would be futile when the proposed amended complaint could not survive the summary judgment motion. *Newburgh/Six Mile Ltd. P'Ship II v. Adlabs Films USA, Inc.*, 724 F. Supp. 2d 740, 752 (E.D. Mich. 2010), *aff'd*, 483 F. App'x 85 (6th Cir. 2012); *see also Nicholson v. Jayco, Inc.* No. 5:15-cv-2010, 2016 WL 5463215, at *23 (N.D. Ohio Sept. 29, 2016).

Although Plaintiffs seek to clarify that they are asserting Terracon acted with gross negligence, that does not change the Court's analysis that Plaintiffs' claims sound in contract law, not tort law—rendering the parties' limitation of liability provisions enforceable. *See LDCircuit*, 364 F. Supp. 2d at 1248 (noting that Kansas courts do not recognize the tort of bad-faith breach of contract) (citing *N. Cent. Kansas Prod. Credit Ass'n v. Hansen*, 732 P.2d 726, 731 (1987)). Similarly, Plaintiffs' reliance on all three agreements is unavailing, as Defendant has demonstrated that Terracon has paid more than the aggregate liability cap of $125,000. Accordingly, Plaintiffs' amended complaint

would fare no better than their first complaint in the face of Defendant's motions for summary judgment.

## IV.  CONCLUSION

Based upon the foregoing, Defendant's motion for summary judgment (Docs. 9, 16) is **GRANTED**.  Plaintiffs' motion for leave to amend complaint (Doc. 12) is **DENIED**.  The Clerk shall enter judgment accordingly, whereupon this case is **TERMINATED** from the docket of this Court.

**IT IS SO ORDERED.**

Date:        9/23/19

Timothy S. Black
United States District Judge